UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STEVEN MEROLA,

    Plaintiff,

v.

PETER M. COCO, FRANK CIERI, DON GUIDO
REALTY TRUST, OLDE CENTER VENTURES, INC.,
CLAIRE COCO, AMY FALLONI, GOLDEN BROOK, INC.,
(f/k/a BOND INDUSTRIES. LTD., and
RICHARD COHEN,

    Defendants.

Civil Action No. _____

17    10701

CIVIL RICO COMPLAINT

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, Steven Merola ("Plaintiff" or "Merola") brings this Complaint against each of the Defendants and co-conspirators named herein, and alleges against them as follows.

## NATURE OF THE CASE

This action arises out of the fraudulent and extortionary scheme orchestrated and directed by Defendants Peter M. Coco ("P. Coco") and Frank Cieri ("Cieri"), and perpetrated, implemented and furthered by their corporate entities, Don Guido Realty Trust ("DGRT"), Olde Center Ventures, Inc. ("OCVI") and Golden Brook, Inc. (f/k/a Bond Industries, Ltd.) ("GBI"), and their primary co-conspirators, Claire Coco ("C. Coco"), Amy Falloni ("Falloni"), and Richard Cohen ("Cohen") (collectively, "Defendants") to systematically and continuously demand, receive, hide, evade taxes on, and reinvest ill-gotten gains on, several millions of dollars from predatory and usurious loans through the pervasive and ongoing use of fraud, false bookkeeping and accounting,, and extortion.

## PARTIES

1. Plaintiff Merola is an individual residing at 84 Russett Lane, North Andover, MA 01845.
2. Defendant P. Coco is an individual residing at 46 Bear Hill Road, North Andover, MA 01845, and at The Barclay, 3546 South Ocean Boulevard, South Palm Beach, FL 33480.
3. Defendants Cieri is an individual residing at 58 Old Village Lane, North Andover, MA 01845, and at 1212 Ben Franklin Drive, #207, Sarasota, FL 34236.
4. Defendant DGRT is a Massachusetts trust formed by P. Coco and Cieri in furtherance of the Defendants' illegal enterprise and activities. DGRT maintains a principal place of business at 46 Bear Hill Road, North Andover, MA 01845.
5. Defendant OCVI is a Massachusetts corporation formed by P. Coco and Cieri in furtherance of the Defendants' illegal enterprise and activities. DGRT maintains a principal place of business at 147 Summit Street, Summit Industrial Park, Building B, Peabody, MA 01960.
6. Defendant GBI is a Massachusetts corporation run by Defendants P. Coco and Falloni, and used by each of the Defendants in furtherance of their illegal enterprise and activities. GBI maintains

a principal place of business at 147 Summit Street, Summit Industrial Park, Building B, Peabody, MA 01960.

7.  Defendant C. Coco is an individual residing at 46 Bear Hill Road, North Andover, MA 01845, and at The Barclay, 3546 South Ocean Boulevard, South Palm Beach, FL 33480, and at all relevant times herein, has been the wife of Defendant P. Coco.

8.  Defendant Falloni is an individual residing at 9 Porter Street, Beverly, MA 01915. At all relevant times herein, Falloni has been the personal secretary and administrative assistant to Defendant P. Coco, and has served as the Corporate Secretary of Defendant GBI.

9.  Defendant Cohen is an individual residing at multiple addresses throughout the United States including, PO Box 655, North Hampton, NH 03862, and at and at 21 Rockrimmon Road North Hampton , NH 03862, as well as at 1793 North Beverly Glen, Los Angeles, CA 90077. Cohen worked jointly with the other named Defendants in furtherance of their illegal activities and overall scheme as set forth herein.

## JURISDICTION AND VENUE

10. Jurisdiction over this action is conferred on this Court as this case arises under the provisions of the federal RICO statutes, 18 U.S.C., Sections 1962-1964.

11. Venue is proper in this District as many of the Defendants' unlawful acts, transactions, and occurrences complained of herein emanated from Massachusetts.

## SCOPE OF THE ENTERPRISE

12. The Defendants acting together under the corporate identities of DGRT, OCVI, GBI, and possibly others, engaged in a scheme to illegally obtain several millions of dollars by mail fraud, wire fraud, usury, extortion, tax evasion, and other illegal acts, including fraudulently claiming in court papers that loans issued by the Defendants and their corporate entities were not repaid.

## FACTUAL ALLEGATIONS AND PREDICATE ACTS

13. Defendants P. Coco and Cieri began engaging in predatory and usurious lending practices, primarily as unlicensed predatory mortgage brokers and lenders, through their jointly formed and controlled entity, Defendant DGRT, whereby they demanded and received substantial upfront cash payments that were not recorded on their books or reported as taxable income. In several such cases, original loans were refinanced (under the threat of foreclosure or repossession of collateral by P. Coco and Cieri) with additional usurious loans whereby they extorted additional hidden upfront cash payments.

14. Plaintiff's relationship with the Defendants began in or about 2003 when Plaintiff met Defendants former attorney, James V. Miragliotta, who introduced Plaintiff to P. Coco and Cieri to discuss a loan for a real estate development. At the time, Defendants' lending operations were being conducted through Defendant DGRT. DGRT had a line of credit with River Bank that DGRT, P. Coco and Cieri used to originate loans.

15. The bulk of Defendant DGRT's loans were made in connection with residential mortgages despite the fact that DGRT, P. Coco, and Cieri were not licensed mortgage originators or brokers.

16. After several years of conducting the above-described predatory loan and illegal cash payment scheme with the assistance of their then-regular closing attorney, James V. Miragliotta through

approximately December 2005, Attorney Miragliotta became under investigation by the Massachusetts Board of Bar Oversees, due to his participation in handling DGRT's illegal cash payments and initiating usurious and predatory mortgage loan transactions.

17. In response to the investigation of Attorney Miragliotta, P. Coco and Cieri ceased conducting their unlawful activities through DGRT and Miragliotta, and continues the business formerly conducted through DGRT mainly through their newly-formed entity, Defendant OCVI (incorporated January 1, 2006), and in part through GBI, using one of P. Coco's existing corporate entities (Bond Industries, Ltd. changed its name to Golden Brook, Inc. on September 18, 2006). In doing so, Defendants continued to utilize the same line of credit with River Bank that DGRT had used prior to 2006 to fund their illegal scheme and enterprise. (Attorney Miragliotta's license to practice law was ultimately suspended on October 31, 2007.)

18. When P. Coco and Cieri transformed DGRT into OCV and GBI, and continued and expanded DGRT's business and related secret cash receipts through those entities, they also conspired to further disguise their fraudulent scheme by making certain loans through Metropolitan Capital LLC ("MetCap") and its managing member, Plaintiff Merola.

19. In this phase of their conspiracy, P. Coco and Cieri moved monies from DGRT to OCV and then loaned a substantial portion of them to MetCap (also with hidden and unreported upfront cash payments) to be loaned to businesses throughout the United States.

20. P. Coco and Cieri demanded and directed that cash payments be made by Merola to them directly, as well as through P.Coco's wife, Defendant C. Coco, and P. Coco's personal secretary and administrative assistant, Defendant Falloni (who served as GBI's corporate Secretary and also handled all bookkeeping for DGRT, OCV and GBI).

21. P. Coco and Cieri routinely required cash payments upfront from borrowers and from MetCap/Merola at the inception of both commercial and residential mortgage loans. These payments were mainly unaccounted for and not reported as taxable income. Some of the cash payments were credited by P. Coco and Falloni to GBI because it had large (possibly $3 million) tax loss carryforwards so that they could offset cash profits without paying taxes.

22. The cash payments demanded and obtained by the Defendants were used largely to fund further loan business by the Defendants and to thereby obtain additional cash payments.

23. Defendants also blatantly violated applicable usury laws. For example, Defendants DGRT and Cohen charged usurious rates to borrowers (in excess of the Massachusetts statutory limit of 20% per annum) despite the fact that neither of them ever had statutorily-required letters on record with the Massachusetts Office of Attorney General. In addition, Defendants OCV and GBI contractually agreed to not exceed the applicable statutory usury rate but routinely did so anyway.

24. Defendants continuously and systematically (beginning through DGRT and continuing through OCV and GBI, demanded substantial (10 to 20%) upfront cash fees for all business, with cash usually delivered in an envelope personally to P. Coco. P. Coco required and demanded upfront cash payments under threats of "no more business" and "I will sue you into the poor house." He also demanded that MetCap and Merola do business with Defendant Cohen, and to not do business with anyone else except P,Coco, Cieri, Cohen and their controlled entities, under the same or substantially similar threats.

25. Defendants regularly evaded payment of federal and state income taxes by not reporting their receipt of cash payments on their tax returns filed with the Internal Revenue Service and

Massachusetts Department of Revenue, Also, P. Coco falsely claims Florida residency to evade Massachusetts state income tax. In addition, Defendant Cohen claims New Hampshire residency in order to evade Massachusetts and/or California state income tax.

26. In attempting to conceal their ongoing pattern of illegal conduct and preserve their ill-gotten gains, Defendants have defrauded courts and perjured themselves in sworn affidavits in court proceedings. For example, Defendant P. Coco tried to gain access to MetCap's business information and client base and to take clients from MetCap, succeeding in doing so on two occasions. When his efforts were frustrated, he and Cieri commenced a frivolous lawsuit against MetCap, Plaintiff Merola, and his family members where P. Coco and Cieri lied about the amounts of remaining balances on outstanding loans due to OCV, and lied about funds allegedly being misappropriated by Merola and his family members.

27. By submitting false information to the Court and in supporting affidavits, P. Coco and Cieri were able to gain access to confidential financial records and information of MetCap, Merola, and his family members through subpoenas issued to their banking institutions on an ex parte basis before Plaintiff Merola and his family were even served or otherwise made aware of the pendency of case against them.

28. Defendants agreed to apply loan payments to principal in order to induce accelerated repayments on certain loans then just kept the repayments as interest and never applied them to principal despite their agreement. For example, in 2011, Plaintiff Merola met with Defendant P. Coco regarding a $500,000 Note that OCV issued to MetCap in July, 2009. At that time, MetCap was paying OCV $6,875 per month in interest only. In 2011, Merola and P. Coco agreed that those monthly payments should begin being applied to principal because they were aware that Attorney Peter Lagorio (attorney for MetCap) was having problems with the Massachusetts Board of Bar Overseers which were causing problems for MetCap to collect debt repayments that flowed through him to MetCap. Although OCV then began sending statements to MetCap via email showing the revised payment structure and although P. Coco assured Merola that it was being implemented and payments were being credited to principal as agreed, OCV never did so. Instead, Coco made a demand for the entire principal amount in 2015 and texted Merola asking to "go out for salad" (P. Coco's code for demanding cash).

29. Rather than being reported as taxable income, cash received by the Defendants was used to purchase luxury items such as gold, watches, jewelry, upgrades for P. Coco's Florida condo, to travel and to gamble in casinos in Connecticut and Nevada.

30. P. Coco also used the cash in his Summit Office Park buildings in Peabody in the form of payments to contractors and suppliers. Defendant Cohen used cash to buy a car, and for various items in New Hampshire and California. Plaintiff Merola and his wife routinely delivered cash payments to Defendants P. Coco and C. Coco in Florida and to Cohen in New Hampshire and in Los Angeles, California.

31. Defendants P. Coco and Cieri engaged in a pattern of mail fraud, wire fraud and other illegal conduct in connection with certain notes issued to Plaintiff and his company, including but not limited to:

    A. $30,000 Note 1/6/2010 (Repaid 5/2010) – Usury: Rate of interest 24%. Body of Note states that interest rate will not exceed statutory legal rate of State where Note is recognized and delivered (18% in MA).  Fraud/Extortion: P. Coco/Cieri/OCV demanded and collected

interest on Note even after it was paid off in full. Perjury: They state in Superior Court affidavits that Note remains unpaid. Structuring/Money Laundering/Tax Evasion: They received $3,000 at the outset of Note but did not record or report the cash as income. Fraud: P. Coco agreed to credit the overpayment on this Note of $12,600 to the $500,000 Note of July 2009 that OCV made to MetCap but Merola learned (in late 2015 when he was served with a suit alleging non-payment of certain Notes) that no credit was ever recorded or otherwise applied.

B. $50,000 Note 10/9/2009 (Repaid 3/2/2011) – Extortion/Tax Evasion: P. Coco received $5,000 in upfront cash fees at the inception of this Note. The cash payment was not recorded or reported as taxable income.

C. $30,000 Note 3/22/2010 (Repaid 4/2015) – Rate of interest 18%. Extortion: P. Coco/Cieri/OCV continued to demand additional payments and never acknowledged full repayment of Note in April 2015.  Fraud/Perjury: They lied to the Superior Court in their 2015 Complaint, Affidavits and Amended Complaints that these 3 Notes (3 of the 5 Notes they sued on) remained unpaid.

D. $15,000 Note 2/3/2011 – Usury/Extortion/ Tax Evasion: P. Coco structured, issued, and collected on a $15,000 Note that he issued personally to Merola at an interest rate of 5% per month (60% per annum) without registering as a usury lender with the Massachusetts Attorney General's office.

E. $500,000 Note July 2009 – Fraud: As stated above in paragraph 28, in 2011, Defendants agreed to apply loan payments to principal in order to induce accelerated repayments on certain loans then just kept the repayments as interest and never applied them to principal despite their agreement. Although OCV then began sending statements to MetCap via email showing the revised payment structure and although P. Coco assured Merola that it was being implemented and payments were being credited to principal as agreed, OCV never did so, then filed Court documents that misstated the remaining principal by omitting the agreed-upon principal repayments.

F. $150,000 Note 3/15/2013 – Usury/Extortion/Tax Evasion: Cohen demanded and received $12.500 in upfront cash payments for this Note that he structured and issued at usurious rates without registering with the Massachusetts Attorney General's Office (or in New Hampshire or California) although Cohen received cash payments from Plaintiff Merola in all three States.

G. $200,000 Note 8/2010 – Fraud/Extortion/Tax Evasion: P. Coco through GBI made a $200,000 loan to a client of Attorney Lagorio through MetCap. The Note called for a 10% penalty on late payments. P. Coco demanded, however, that the penalty be enforced as a 10% per month cash payment to him on the entire principal. As a result, P. Coco received $460,000: $20,000 in cash up front (net check amount issued to borrower was only $180,000) then $20,000 per month for 13 months, all of which was in cash - and the full return of the $200,000 principal.

32. The scope of Defendants' fraudulent scheme and pattern of illegal conduct and activity is further illustrated in the Civil RICO Complaint filed by John Feloni in the case of Feloni v. Peter M. Coco, et al., Civil Action No. 1:16-cv-12178-GAO(D. Mass.) wherein it is alleged, among other things, that Coco/Cieri enterprise similarly demanded, received, concealed, evaded taxes on,

and reinvested ill-gotten gains on, exorbitant upfront cash payments in connection with usurious and predatory commercial and personal loans and as unlicensed residential mortgage originators and brokers.

33. The scope of Defendants' fraudulent scheme and pattern of illegal conduct and activity is also further described in the Complaint (bringing claims against P. Coco and OCV for Negligence, Fraud, Violations of M.G. L. Chapter 93A and Unjust Enrichment) filed by Edward P. Germano and Marianne R. Germano in the case of Germano v. Germano, et al., Civil Action No. 16-1310 (Norfolk Superior Court) wherein it is alleged, among other things, that P. Coco and OCV issued three fraudulent mortgages in the amounts of $640,000, $490,000, and $725,775, respectively, on the residence of an elderly couple that was held in a Trust while P. Coco and OCV knew that the Trust documents were falsified.

34. Defendants, willfully and jointly conspired to facilitate and implement a fraudulent scheme and ongoing pattern of illegal activities and conduct, including the establishment, operation, support, maintenance and concealment of a RICO enterprise since at least as early as 2003, emanating from their home base in Massachusetts and spanning several other states, including but not limited to New York, New Hampshire, Florida, California, Delaware, and New Jersey.

35. The Plaintiff has suffered substantial damages, and continue to be damaged in his business and property, as a result of Defendants' above-described misconduct.

COUNT I

Violation of CIVIL RICO, 18 U.S.C. 1962(c)

(All Defendants)

36. Plaintiff repeats and re-alleges the facts contained in each of the foregoing paragraphs as if fully set forth herein.

37. Each of the Defendants violated RICO and Plaintiff was injured as a result.

38. Each Defendant is a "person" capable of holding legal or beneficial interest in property within the meaning of 18 U.S.C. 1961(3).

39. Each Defendant violated 18 U.S. C. 1962 (c) by the acts described above.

40. The Defendants created and operated an enterprise within the meaning of 18 U.S.C. 1962(c) and for a period of at least 13 years have engaged in the conduct of their business and affairs through a continuing pattern of racketeering activity.

41. The Defendants did knowingly, willfully, and unlawfully conduct and/or participate in, directly or indirectly, in the affairs of the illegal enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. 1961(1), 1961(5), and 1962(c).

42. Defendants' racketeering activity was made possible by their regular and repeated use of the facilities and services of the enterprises, including instrumentalities of interstate commerce.

43. Defendants had the specific intent to engage in the substantive RICO violations that the Plaintiff alleges herein.

44. Predicate acts of racketeering activity are acts which are indictable under provisions of the U.S. Code enumerated in 18 U.S.C. 1961(1)(B) as more specifically alleged herein. Defendants each committed at least three such acts and/or aided and abetted such acts as alleged above.

45. Defendants' acts of racketeering were not isolated, but, rather, said acts were related in that they had the same or similar purpose and result, participants, victims, and method of commission.

46. The acts of racketeering have also been continuous. There was repeated conduct during the period from at least as early as 2003 and continuing through the present, and there is a continuing threat of repetition of such conduct.

47. Defendants carried out their scheme throughout several States, including but not limited to, Massachusetts, New York, New Hampshire, Florida, California, New Jersey, and Delaware.

48. Defendants' violations of federal and state law as set forth herein, each of which directly and proximately caused injury to Plaintiff and other victims, constituted a continuous course of conduct spanning 2003 through the present which was intended to, and did, obtain money through false representations, fraud, deceit, and other unlawful means, as set forth above. Therefore, said violations constituted part of a pattern of racketeering activity under U.S.C. 1961(1) and (5).

49. Defendants have conducted and/or participated, directly and/or indirectly, in the conduct of the affairs of their enterprises through a pattern of racketeering activity as defined herein in violation of 18 U.S.C. 1962(c).

50. The unlawful actions of the Defendants, and each of them, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiff in his business and property.

51. Plaintiff seeks an award of damages in compensation for, among other things, the amounts that Defendants stole from Plaintiff.

52. Plaintiff accordingly seeks an award of three times the damage he sustained, and the recovery of reasonable attorneys' fees and costs, as well as any other relief authorized by statute.

COUNT II

Conspiracy to Violate Civil RICO, 18 U.S.C. 1962(d)

(All Defendants)

53. Plaintiff repeats and re-alleges the facts contained in each of the foregoing paragraphs as if fully set forth herein.

54. Each of the Defendants violated RICO and Plaintiff was injured as a result.

55. In violation of 18 U.S.C. 1962(d), the Defendants, and each of them, knowingly, willfully and unlawfully conspired to facilitate a scheme which included the operation or management of a RICO enterprise through a pattern of racketeering activity as alleged above,

56. Each Defendant committed at least one overt act in furtherance of such conspiracy, including but not limited to, misleading the Plaintiff, and demanding cash to satisfy their money laundering and tax evasion scheme.

57. The unlawful actions of the Defendants, and each of them, in furthering their conspiracy, have directly, illegally, and proximately caused and continue to cause injuries to Plaintiff in his business and property.

58. Plaintiff seeks an award of damages in compensation for, among other things, the amounts that Defendants stole from Plaintiff.

59. Plaintiff accordingly seeks an award of three times the damage he sustained, and the recovery of reasonable attorneys' fees and costs, as well as any other relief authorized by statute

COUNT III
Pendent Claim: Fraud
(All Defendants)

60. Plaintiff repeats and re-alleges the facts contained in each of the foregoing paragraphs as if fully set forth herein.

61. Defendants made intentional material misrepresentations to the Plaintiff with the intention that Plaintiff rely on said misrepresentations.

62. Plaintiff reasonably relied on Defendants' material misrepresentation to his detriment.

63. Plaintiff suffered substantial damages a s a result.

COUNT IV
Pendent Claim: Usury
(Defendants DGRT, P.Coco, and Cohen)

64. Plaintiff repeats and re-alleges the facts contained in each of the foregoing paragraphs as if fully set forth herein.

65. On various occasions during the relevant time period herein, Defendant DGRT made numerous loans carrying an annual interest rate in excess of the Massachusetts usury rate without being registered with the Massachusetts Office of Attorney General.

66. On or about February 3, 2011, Defendant P. Coco structured, issued, and collected on a $15,000 Note that he issued personally to Merola at an interest rate of 5% per month (60% per annum) without registering as a usury lender with the Massachusetts Office of Attorney General.

67. On or about March 15, 2013, Defendant Cohen issued a loan and note to MetCap in the principal amount of $125,000, which was due to be paid back with all accrued interest and penalties by April 15, 2015. Interest was charged by Cohen to MetCap on that loan and note as follows: (a) $25,000 base interest; (b) 2% per annum additional interest; (c) 1% per annum additional interest upon any default; and (d) 1% per month (12% per annum) upon occurrence of a late payment, for a total interest rate of approximately 24% per year.

68. Pursuant to the Massachusetts Criminal Usury Statute (the "Usury Statute"), MGL Chapter 271, Section 49(a):

Whoever in exchange for either a loan of money or other property knowingly contracts for, charges, takes or receives, directly or indirectly, interest and expenses the aggregate of which exceeds an amount greater than twenty per centum per annum upon the sum loaned or the equivalent rate for a longer or shorter period, shall be guilty of criminal usury and shall be punished by imprisonment in the state prison for not more than ten years or by a fine of not more than ten thousand dollars, or by both such fine and imprisonment. For the purposes of this section the amount to be paid upon any loan for interest or expenses shall include all sums paid or to be paid by or on behalf of the borrower for interest, brokerage, recording fees, commissions, services, extension of loan, forbearance to enforce payment, and all other sums charged against or paid or to be paid by the borrower for making or securing directly or indirectly the loan, and shall include all such sums when paid by or on behalf of or charged against the borrower for or on account of making or securing the loan, directly or indirectly, to or by any person, other than the lender, if such payment or charge was known to the lender at the time of making the loan, or might have been ascertained by reasonable inquiry.

69. Defendants DGRT, P. Coco, and Cohen did not register or otherwise notify the Massachusetts Attorney General, as required by paragraph (d) of the Usury Statute, of their intent to engage in

a transaction or transactions which charged in excess of the maximum 20% usury rate, or were otherwise proscribed.

70. Under paragraph (c) the Usury Statute: "Any loan at a rate of interest proscribed under the provisions of paragraph (a) may be declared void by the supreme judicial or superior court in equity upon petition by the person to whom the loan was made."

71. Defendants DGRT, P. Coco, and Cohen each is civilly liable to Plaintiff and potentially criminally liable for charging and demanding amounts in excess of the 20% legal limitation in violation of the Usury Statute.

COUNT V

Pendent Claim: Violation of MGL c. 93A

(All Defendants)

72. Plaintiff repeats and re-alleges the facts contained in each of the foregoing paragraphs as if fully set forth herein.

73. Plaintiff is a "person" and engages in "trade or commerce" within the meaning of Mass. Gen. Laws c. 93A, 1.

74. Each of the Defendants is a "person" and engages in "trade or commerce" within the meaning of

75. M.G.L. c. 93A, l.

76. Defendants' conduct constituting violations of M.G.L. c. 93A occurred primarily and substantially in Massachusetts.

77. Defendants' activities as set forth above constitute willful and knowing violations of M.G.L. c. 93A, Sections 2 and 1 1.

78. As a result of Defendants' violations of M.G.L. c. 93A, Sections 2 and l l, Plaintiff has suffered monetary damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A.    Award Plaintiff monetary damages in an amount to be proven at trial;

B.    Award Plaintiff treble damages on Counts I, II, and V;

C.    Award Plaintiff pre-judgment and post-judgment interest;

D.    Award Plaintiff his reasonable attorneys' fees and litigation costs; and

E.    Grant any other relief that this Court may deem just and proper.

**THE PLAINTIFF DEMANDS A JURY TRIAL ON ALL CLAIMS SO TRIABLE**

Dated: 5 - 10 -, 2017

Steven Merola
84 Russett Lane
North Andover, MA 01845
(978) 408-4496
steven.merola@gmail.com
Pro Se