UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

STEVEN MEROLA,
     Plaintiff,

     v.                                CIVIL ACTION NO.
                                          17-10701-GAO

PETER M. COCO, FRANK CIERI,
DON GUIDO REALTY TRUST,
OLDE CENTER VENTURES, INC.,
CLAIRE COCO, AMY FALLONI,
GOLDEN BROOK, INC., f/k/a
BOND INDUSTRIES, LTD., and
RICHARD COHEN,
     Defendants.

**REPORT AND RECOMMENDATION RE:
DEFENDANTS' MOTION TO DISMISS
PLAINTIFF STEVEN MEROLA'S COMPLAINT
(DOCKET ENTRY # 19)**

**MEMORANDUM AND ORDER RE:
DEFENDANTS' MOTION FOR SANCTIONS
(DOCKET ENTRY # 21)**

**July 5, 2018**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to dismiss filed by

defendants Peter M. Coco ("P. Coco") and Frank Cieri ("Cieri"),

individually and as co-trustees of the Don Guido Realty Trust,

Inc. ("DGRT"); Olde Center Ventures, Inc. ("OCVI"); Claire Coco

("C. Coco"); Amy Falloni ("Falloni"); and Golden Brook, Inc.

f/k/a Bond Industries, LTD. ("GBI").[1]  (Docket Entry # 19).

---

[1]  P. Coco, Cieri, DGRT, OCVI, C. Coco, Falloni, and GBI are
collectively referred to as "defendants."  As noted by
defendants, defendant Richard Cohen ("Cohen") died on February
2, 2018.

Defendants also filed a motion for sanctions against plaintiff Steven Merola ("Merola"). (Docket Entry # 21). Merola opposes both motions. (Docket Entry # 28). After conducting a hearing on May 21, 2018, this court took the motions (Docket Entry ## 19, 21) under advisement.

<u>PROCEDURAL BACKGROUND</u>

Merola initiated this action on May 10, 2017, by filing a complaint seeking damages against defendants and Cohen for a "fraudulent and extortionary scheme" to "demand, receive, hide" and "reinvest . . . several millions of dollars from predatory and usurious loans" through the use of "fraud, false bookkeeping and accounting, and extortion." (Docket Entry # 1). The complaint sets out the following claims: (1) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) (Count I); (2) conspiracy to violate RICO, 18 U.S.C. § 1962(d) (Count II); (3) fraud (Count III); (4) usury (Count IV); and (5) violation of Massachusetts General Laws chapter 93A ("chapter 93A") (Count V). Count IV raises a claim only against DGRT, P. Coco, and Cohen. (Docket Entry # 1).

Defendants seek a dismissal under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") because Merola's claims have been adjudicated in prior litigation between the parties and are thus barred by the doctrine of res judicata, also known as claim preclusion.

They further argue that Merola failed to raise any new claims in this action as compulsory counterclaims in the prior action.

Alternatively, defendants seek a more definite statement pursuant to Fed. R. Civ. P. 12(e) ("Rule 12(e)") because the claims are vague and ambiguous.  (Docket Entry # 20). Defendants also seek sanctions under Fed. R. Civ. P. 11(c) ("Rule 11(c)") because Merola filed the complaint without a factual basis and in retaliation against defendants.  (Docket Entry # 22).

I.  Motion to Dismiss

### STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), a court "accept[s] as true all well pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiffs."  Gargano v. Liberty International Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).  "To survive a motion to dismiss, the complaint must allege 'a plausible entitlement to relief.'"  Fitzgerald v. Harris, 549 F.3d 46, 52 (1st Cir. 2008).  While "detailed factual allegations" are not required, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement for relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic v. Twombly, 550 U.S. 554, 555 (2007); Maldonado v. Fontanes, 563 F.3d 263, 266

(1st Cir. 2009).  Additionally, "a well-pleaded complaint may succeed even if . . . actual proof of those facts is improbable."  Bell Atlantic v. Twombly, 550 U.S. at 556.

In order to assess a Rule 12(b)(6) motion, a court should consider the complaint and any documents attached to it.  See Trans-Spec v. Catterpillar, 524 F.3d 315, 321 (1st Cir. 2008). In conducting this review, it is appropriate to consider "'documents the authenticity of which are not disputed by the parties; . . . official public records; . . . documents central to plaintiff's claim; or . . . documents sufficiently referred to in the complaint.'"  Gargano v. Liberty Intern. Underwriters, Inc., 572 F.3d 45, 47 (1st Cir. 2009) (quoting Watterson v. Page, 987 F.2d 1, 3-4 (1st Cir. 1993)).  It is also appropriate to include facts susceptible to judicial notice, such as the verified third amended complaint in the state court proceeding (Docket Entry # 20-1).  See Butler v. Balolia, 736 F. 3d 609, 611 (1st Cir. 2013) (supplementing facts in complaint "by examining 'documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice'").

## FACTUAL BACKGROUND

Merola is a resident of North Andover, Massachusetts and a managing member of Metropolitan Capital, LLC ("Metropolitan Capital").  (Docket Entry # 1, ¶¶ 1, 18).  DGRT is a

Massachusetts trust formed by P. Coco and Cieri with a principal place of business in North Andover.  (Docket Entry # 1, ¶ 4). DGRT has a line of credit with River Bank through which P. Coco and Cieri "originated loans."  (Docket Entry # 1, ¶ 14).  In approximately 2005, subsequent to an investigation of P. Coco and Cieri's attorney regarding his participation in "handling" DGRT's cash payments and "usurious and predatory mortgage loan transactions," P. Coco and Cieri continued their loan business formerly conducted through DGRT through OCVI and in part through GBI.  (Docket Entry # 1, ¶¶ 16, 17).  OCVI is a Massachusetts corporation formed by P. Coco and Cieri on January 1, 2006 with a principal place of business in Peabody, Massachusetts. (Docket Entry # 1, ¶ 5).  GBI is a Massachusetts corporation run by P. Coco and Falloni, which was previously incorporated by P. Coco as Bond Industries, Ltd.  (Docket Entry # 1, ¶¶ 5, 17). Falloni is the personal secretary and administrative assistant to P. Coco and has served as corporate secretary for GBI. (Docket Entry # 1, ¶ 8).  C. Coco is the wife of P. Coco and resides in North Andover and South Palm Beach, Florida.  (Docket Entry # 1, ¶ 7).

A.   Massachusetts Superior Court Case[2]

---

[2]  This section sets out the facts and legal claims brought against Merola in a 2015 case filed in Massachusetts Superior Court (Essex County).  Defendants argue, in part, that the

From the time period of July 2, 2009 through August 6, 2010, OCVI "made six loans to Metropolitan Capital pursuant to a series of six written promissory notes."[3] (Docket Entry # 20-1, ¶ 14). On July 2, 2009, OCVI loaned $500,000 to Metropolitan Capital at an interest rate of 16.5% per annum ("OCVI note one"). (Docket Entry # 20-1, p. 21).[4] OCVI note one was secured by an agreement providing OCVI with a "first security interest" in all property owned by Metropolitan Capital ("Olde Center security agreement"). (Docket Entry # 20-1, p. 67).

On October 9, 2009, OCVI loaned $50,000 to Metropolitan Capital at an interest rate of 16.5% per annum ("OCVI note two"). (Docket Entry # 20-1, p. 28). The following year, on January 26, 2010, OCVI made a loan of $30,000 to Metropolitan Capital at an interest rate of 24% per annum ("OCVI note three"). (Docket Entry # 20-1, p. 36). OCVI loaned an additional $30,000 to Metropolitan Capital on March 22, 2010 at an interest rate of 18% per annum ("OCVI note four"). (Docket Entry # 20-1, p. 44). Later that year, on May 14, 2010, OCVI made a fifth loan of $35,000 to Metropolitan Capital at an

---

claims in the case at bar constitute compulsory counterclaims that Merola should have brought in the state court action.

[3] The six promissory notes are collectively referred to as the "OCVI notes."

[4] Page numbers refer to the page number as docketed rather than the number of the actual document.

interest rate of 3% per month ("OCVI note five").  (Docket Entry # 20-1, p. 52).  Finally, on August 6, 2010, OCVI loaned $125,000 to Metropolitan Capital at an interest rate of 6% per annum ("OCVI note six").  (Docket Entry # 20-1, p. 57).  As stated in the OCVI notes, "the proceeds of th[e] note[s] w[ould] not be used for personal, family or household purposes, but exclusively for [Metropolitan Capital]'s commercial purposes." (Docket Entry # 20-1).

Between July 2, 2009 and August 6, 2010, Metropolitan Capital made payments to Merola, Stephanie Merola, Metropolitan Capital Income Fund I, LLC ("Metropolitan Capital Income Fund"), L & M Financial Corp. ("L & M"), and RICO Realty Trust "in contravention of the express limitation" for exclusive commercial use contained in the OCVI notes.  (Docket Entry # 20-1, ¶¶ 26, 28).  Metropolitan Capital Income Fund is a limited liability company incorporated in Delaware with a principal place of business in North Andover.  (Docket Entry # 20-1, ¶ 4). L & M is incorporated in Delaware and has a principal place of business in Boston.  (Docket Entry # 20-1, ¶ 5).  Merola is a beneficiary and "co-trustee of the RICO Realty Trust, under declaration of trust dated April 21, 2006, and recorded at the Essex South Registry of Deeds at Book 10140, Book 136."  (Docket Entry # 20-1, ¶ 7).  In addition to the payments he received from Metropolitan Capital, Merola took "at least $150,000 . . .

7

from [Metropolitan Capital]'s checking account" during this time period.  (Docket Entry # 20-1, ¶ 27).

Under the terms of the OCVI notes, Metropolitan Capital was to repay the full amounts of the loans, plus interest, on or before the listed "maturity dates."  (Docket Entry # 20-1, ¶ 19).  Metropolitan Capital did not make payment in full on the OCVI notes on or before the agreed upon dates.  (Docket Entry # 20-1, ¶ 17).  "Metropolitan Capital owe[d] OCVI $1,038,507.25, plus additional interest and attorneys' fees, pursuant to the OCV[I] notes."  (Docket Entry # 20-1, ¶ 19).

On March 22 and April 12, 2013, Cohen made two loans to Metropolitan Capital of $50,000 and $75,000 respectively, pursuant to a promissory note ("Cohen note") in the amount of $150,000.  (Docket Entry # 20-1, p. 4, ¶ 21) (Docket Entry # 20-1, p. 78).  The additional $25,000 served as "interest on the loan," supplementary to the 2% per annum interest rate.  (Docket Entry # 20-1, ¶ 21).  "Pursuant to the terms of the Cohen note, Metropolitan Capital was to repay the entire loan amount, plus interest, on or before April 15, 2015."  (Docket Entry # 20-1, ¶ 22).  Metropolitan Capital did not make payment in full by April 15, 2015.  (Docket Entry # 20-1, ¶ 22).  "Metropolitan Capital owe[d] Cohen $150,000," plus additional interest and attorneys' fees pursuant to the Cohen note.  (Docket Entry # 20-1, ¶ 24).

On September 4, 2015, OCVI and Cohen filed the

aforementioned lawsuit against Metropolitan Capital,

Metropolitan Capital Income Fund, L & M, and Merola,

individually and as co-trustee of the RICO Realty Trust in

Massachusetts Superior Court (Essex County) ("the Essex case").

(Docket Entry # 20-2).  OCVI and Cohen filed a verified third

amended complaint on March 2, 2016, seeking damages for breach

of the OCVI notes, the Olde Center security agreement, and the

Cohen note.  (Docket Entry # 20-1).  Based on the foregoing

facts, the third amended complaint set out the following causes

of action:  (1) breach of contract (counts I-VIII); (2)

fraudulent conveyance (Count IX); (3) fraud/intentional

misrepresentation (Count X); (4) alter ego (Count XI); (5)

violations of chapter 93A, section 11 (counts XII, XIII); and

(6) reach and apply (Count XIV).  (Docket Entry # 20-1).

On June 16, 2016, Metropolitan Capital and Metropolitan

Income Fund filed an emergency motion to remove a default and

file a late answer to the third amended complaint.  (Docket

Entry # 20-3).  The motion put forth the following arguments:

(1) the answer dated March 22, 2016 is valid as to Metropolitan

Capital and Metropolitan Income Fund; (2) OCVI and Cohen's delay

in service contributed to a loss of 60 days to hire counsel and

file an answer; and (3) OCVI perpetrated a fraud on the court.

(Docket Entry # 20-3).  The docket does not reflect any

counterclaims made by Merola, Metropolitan Capital, or any other defendant in the Essex case.  (Docket Entry # 20-2).

On August 4, 2016, the court in the Essex case denied the emergency motion to remove the default on the basis that Metropolitan Capital and Metropolitan Income Fund had not "demonstrated a meritorious defense to th[e] action on the promissory notes."  (Docket Entry # 20-4).  On August 8, 2016, the court entered a default judgment against Metropolitan Capital, Metropolitan Capital Income Fund, and L & M.  (Docket Entry # 20-5).  Judgment for OCVI was entered in the amount of $1,178,330 and for Cohen in the amount of $164,461.56.  (Docket Entry # 20-5, pp. 3, 5).  Ultimately on October 24, 2017, the court entered a stipulation of dismissal with prejudice as to OCVI and Cohen's original complaint against Merola, individually and as co-trustee of the Rico Realty Trust.  (Docket Entry # 20-2, p. 10).

B.  Current Claims

As set out in the complaint in this action, in July 2009, OCVI loaned $500,000 to Metropolitan Capital pursuant to OCVI note one.  (Docket Entry # 1, ¶ 31).  On October 9, 2009, OCVI loaned $50,000 to Metropolitan Capital pursuant to OCVI note two.  (Docket Entry # 1, ¶ 31).  At the inception of OCVI note two, P. Coco "received $5,000 in upfront cash fees," which was

"not recorded or reported as taxable income." (Docket Entry # 1, ¶ 31).

According to the complaint, in the course of their loan business, P. Coco and Cieri required upfront cash payments of ten to 20%. (Docket Entry # 1, ¶ 24). P. Coco demanded payments "under threats" of discontinued business and legal action. (Docket Entry # 1, ¶ 24). Per the instruction of P. Coco and Cieri, Merola made payments to P. Coco, Cieri, C. Coco, and Falloni. (Docket Entry # 1, ¶ 20). Merola and his wife "delivered cash payments to . . . P. Coco and C. Coco in Florida and to Cohen in New Hampshire and in Los Angeles, California." (Docket Entry # 1, ¶ 30).

Some cash payments were "credited by P. Coco and Falloni to GBI," and the majority, such as the cash payment on OCVI note two, was "unaccounted for and not reported as taxable income" to the Internal Revenue Service and the Massachusetts Department of Revenue. (Docket Entry # 1, ¶ 21). Cash received by P. Coco and Cieri was used to "fund further loan business," purchase "luxury items" and "upgrades for P. Coco's Florida condo," travel, "gamble in casinos in Connecticut and Nevada," and pay contractors and suppliers. (Docket Entry # 1, ¶¶ 22, 28-30).

On January 6, 2010, OCVI loaned $30,000 to Metropolitan Capital pursuant to OCVI note three, which states that the "interest rate will not exceed [the] statutory legal rate of

[the] State where [the] note is recognized and delivered."[5] (Docket Entry # 1, ¶ 31).   At the outset of OCVI note three, P. Coco and Cieri received $3,000, but "did not record or report this cash as income."  (Docket Entry # 1, ¶ 31).

Pursuant to OCVI note four, OCVI loaned $30,000 to Metropolitan Capital on March 22, 2010.  (Docket Entry # 1, ¶ 31).  In May 2010, Metropolitan Capital repaid OCVI note three in full, however, P. Coco, Cieri, and OCVI continued to "demand[] and collect[] interest" after this date, resulting in [an] overpayment of $12,600.  (Docket Entry # 1, ¶ 31).  "P. Coco agreed to credit the overpayment" to OCVI note one. (Docket Entry # 1, ¶ 31).

In August 2010, P. Coco, "through GBI, made a $200,000 loan to a client of [Metropolitan Capital's attorney] through Met[ropolitan] Cap[ital]."[6]  (Docket Entry # 1, ¶ 31).  The promissory note ("GBI note") imposed a 10% penalty on late payments.  (Docket Entry # 1, ¶ 31).  P. Coco enforced the penalty as a "10% per month cash payment to him on the entire

---

[5]  The OCVI notes contain a choice of law clause that states that the notes "shall be governed by the laws of The Commonwealth of Massachusetts."  (Docket Entry # 20-1).  According to the complaint, the statutory legal rate in Massachusetts is 18%. (Docket Entry # 1, ¶ 31).  Under Massachusetts General Laws chapter 271, section 49(a), however, the statutory legal rate is 20%.  Massachusetts General Laws chapter 271, section 49(a).

[6]  This loan was not part of the factual allegations in the Essex case.

principal," resulting in receipt of $260,000 over 13 months in addition to return of the $200,000 principal in full. (Docket Entry # 1, ¶ 31).

In 2011, Merola met with P. Coco regarding OCVI note one. (Docket Entry # 1, ¶ 31). According to the complaint, Metropolitan Capital had experienced difficulty in collecting debt repayments that flowed through its attorney as a result of "problems with the Massachusetts Board of Bar Overseers." (Docket Entry # 1, ¶¶ 28, 31). Merola and P. Coco agreed that OCVI would begin to apply the $6,875 monthly interest payment on OCVI note one to the principal ("principal agreement"). (Docket Entry # 1, ¶ 28). Despite the principal agreement and electronic statements sent by OCVI to Metropolitan Capital reflecting the revised payment structure, OCVI never applied the payments to principal. (Docket Entry # 1, ¶ 31).

On February 3, 2011, P. Coco made a $15,000 loan "personally to Merola" pursuant to a promissory note ("Merola note") at an interest rate of 60% per annum.[7] (Docket Entry # 1, ¶ 31). P. Coco did not register as a "usury lender with the Massachusetts Attorney General's office" at this time. (Docket Entry # 1, ¶ 31). Shortly after, on March 2, 2011, OCVI note two was repaid. (Docket Entry # 1, ¶ 31).

---

[7] This loan was also not part of the factual allegations in the Essex case.

P. Coco "demanded that Met[ropolitan] Cap[ital] and Merola do business with . . . Cohen" and solely with "P. Coco, Cieri, Cohen and their controlled entities" under threats of discontinued business and lawsuits.  (Docket Entry # 1, ¶ 24). On March 15, 2013, Cohen loaned $125,000 to Metropolitan Capital pursuant to the $150,000 Cohen note.  (Docket Entry # 1, ¶ 31). Cohen collected "$12,500 in upfront cash payments" and received cash payments from Merola in Massachusetts, New Hampshire, and California.  (Docket Entry # 1, ¶ 31).  Here again, Cohen did not register as a usury lender with the Attorney General's office in any of the three states in which he received payment on the Cohen note.  (Docket Entry # 1, ¶ 31).

In April 2015, Metropolitan Capital repaid OCVI note four, but P. Coco, Cieri and OCVI "continued to demand additional payments and never acknowledged full repayment of the note." (Docket Entry # 1, ¶ 31).  Further, in 2015, P. Coco made a demand for the entire principal on OCVI note one despite the principal agreement made in 2011.  (Docket Entry # 1, ¶ 28).

On September 4, 2015, P. Coco and Cieri filed the Essex case against Merola and Metropolitan Capital.  (Docket Entry # 1, ¶ 26).  Upon service of the complaint in the Essex case, Merola learned the overpayment credit to OCVI note one from OCVI note three was "never recorded or otherwise applied." (Docket Entry # 1, ¶ 31).  Additionally, in the complaint and affidavits

in the Essex case, P. Coco and Cieri stated that OCVI note three
and OCVI note four remained unpaid, despite full payment by
Merola.  (Docket Entry # 1, ¶ 31).  During the Essex proceeding,
"P. Coco and Cieri lied about the amounts of remaining balances
on outstanding loans due to OCV[I]" and the misappropriation of
funds by Merola and his family members.  (Docket Entry # 1, ¶
26).  Through the Essex case, P. Coco and Cieri "gain[ed] access
to confidential financial records and information of
Metropolitan Capital, Merola and [Merola's] family members
through subpoenas issued to their banking institutions."[8]
(Docket Entry # 1, ¶ 27).  P. Coco obtained "access to
Met[ropolitan] Cap[ital]'s business information and client base"
on two occasions prior to the Essex case.  (Docket Entry # 1, ¶
26).

## DISCUSSION

Defendants move to dismiss all of the claims in the
complaint.  They maintain that, in light of the prior Essex
case, res judicata bars the claims in the case at bar.  (Docket
Entry # 20).  Furthermore, defendants submit that the "factual
allegations are mere speculation and insufficient to support an
entitlement to relief," such that a dismissal under Rule

---

[8]  Although P. Coco and Cieri were not individual defendants in
the Essex case, OCVI, a plaintiff in the Essex case, is a
corporation formed and controlled by P. Coco and Cieri.

12(b)(6) is warranted.  (Docket Entry # 20).  In the
alternative, defendants request a "more definite statement"
under Rule 12(e) because the claims as written are "so vague and
ambiguous that defendants cannot reasonably prepare a response."
(Docket Entry # 20).

## A.  Res Judicata

Defendants primarily argue that the prior state court
action bars the claims against them in the present case on the
grounds of res judicata, more specifically, claim preclusion.
(Docket Entry # 20).  Defendants submit that the Essex case
filed by OCVI and Cohen against Merola and Merola's corporate
entities is based on the same claims and factual allegations set
forth in the complaint.  (Docket Entry # 20).  Defendants
further contend that, to the extent that Merola seeks to pursue
new claims in this action, the claims are barred due to Merola's
failure to raise them as compulsory counterclaims in the Essex
case pursuant to Rule 13(a) of the Massachusetts Rules of Civil
Procedure.  (Docket Entry # 20).  Overall, defendants assert
that res judicata bars Merola from initiating a lawsuit arising
out of the same factual allegations that were adjudicated in the
Essex case.  (Docket Entry # 20).

Res judicata undeniably applies to the case at bar.  See
Pujol v. Shearson Am. Exp., Inc., 829 F.2d 1201, 1207 (1st Cir.
1987) (noting res judicata applies to civil RICO cases); Jucino

v. Commerce Ins. Co., 2011 WL 2638161 at *2 (Mass. App. Div. May
31, 2011) (stating claim preclusion applies to chapter 93A
claim); Massaro v. Walsh, 884 N.E.2d 986 (Mass. App. Ct. 2008)
(stating res judicata applies to fraud claims); Blunsden v.
Marks, 2001 WL 771184, at *2 (Mass. Super. June 27, 2001)
(noting claim preclusion applies to usury claims).  Section 1738
of Title 28 of the United States Code "'requires federal courts
to give the same preclusive effect to state court judgments that
those judgments would be given in the courts of the State from
which the judgment emerged.'"  Cruz v. Melecio, 204 F.3d 14, 18
(1st Cir. 2000).  State law, in this instance the law of
Massachusetts, therefore "applies in deciding the res judicata
effect of a state court judgment in a federal court."  Id.

     "Massachusetts courts apply res judicata in a thoroughly
conventional way."  Andrew Robinson Intern., Inc. v. Hartford
Fire Ins. Co, 547 F.2d 48, 54 (1st Cir. 2008).  The doctrine of
claim preclusion, also known as res judicata, "'makes a valid,
final judgment conclusive on the parties and their privies, and
bars further litigation of all matters that were or *should have
been adjudicated* in the action.'"  Korbin v. Board of
Registration in Medicine, 832 N.E.2d 628, 634 (Mass. 2005)
(quoting Blanchette v. School Comm. of Westwood, 692 N.E.2d 21,
n.3 (Mass. 1998)) (emphasis added).  Moreover, the doctrine
applies even where a litigant is "prepared in a second action to

present different evidence or legal theories to support his claim." <u>Charlette v. Charlette Bros. Foundry, Inc.</u>, 793 N.E.2d 1268, 1277 (Mass. App. Ct. 2003). "[F]ederal and Massachusetts law . . . apply similar three-element tests for claim preclusion." <u>RFF Family Partnership, LP v. Ross</u>, 814 F.3d 520, n.8 (1st Cir. 2016). Under Massachusetts law, claim preclusion requires an identity of the parties or their privies, a prior adjudication on the merits, and an identity of the cause of action. <u>DaLuz v. Dep't of Corr.</u> 746 N.E.2d 501, 505 (Mass. 2001).[9]

Under the first element, neither Merola nor defendants dispute that there is an identity or privity of the parties in the present action and the Essex case. Defendants are seeking to preclude all claims alleged in the present case by Merola, a named defendant in the Essex case, which involves similar facts. Thus, Merola "'has had the incentive and opportunity to litigate

---

[9] Under federal law, the essential elements of res judicata or claim preclusion are: "'(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions.'" <u>Hatch v. Trail King Industries, Inc.</u>, 699 F.3d 38, 45 (1st Cir. 2012) (quoting <u>In re Colonial Mortg. Bankers Corp.</u>, 324 F.3d 12, 16 (1st Cir. 2003)). With respect to the identicality of the causes of action element, the First Circuit employs a "transactional approach to determine whether the asserted causes of action are sufficiently identical or related for claim preclusion purposes." <u>Airframe Systems, Inc. v. Raytheon Co.</u>, 601 F.3d 9, 15 (1st Cir. 2010).

the matter fully in the first lawsuit.'" <u>Korbin v. Board of</u>
<u>Registration in Medicine</u>, 832 N.E.2d at 634 (quoting <u>Heacock v.</u>
<u>Heacock</u>, 520 N.E.2d 151, 153 (Mass. 1988)).

Turning to the second element of claim preclusion, the
parties do not contest that the dismissal with prejudice in the
Essex case as to Merola constituted a final judgment on the
merits.  "In Massachusetts, a dismissal under Rule 12(b)(6)
operates as a binding adjudication on the merits, with res
judicata effect."  <u>New England Power Co. v. Town of Norwood</u>,
2001 WL 292974 at *4 (Mass. Super. Feb. 8, 2011).

The only cognizable dispute therefore concerns the third
element, i.e., identicality of the causes of action.  Claim
preclusion bars the litigation of "'all matters that were or
should have been adjudicated'" in the prior action.  <u>Korbin v.</u>
<u>Board of Registration in Medicine</u>, 832 N.E.2d at 634 (quoting
<u>Blanchette v. School of Comm. of Westwood</u>, 692 N.E.2d at 21).
"Massachusetts courts use a transactional approach to determine
whether two causes of action are the same for purposes of claim
preclusion."  <u>Dawe v. Capital One Bank</u>, 456 F. Supp. 2d 236, 240
(D. Mass 2006).  Specifically, Massachusetts courts ask whether
the claims "'derive[] from the same transaction or series of
connected transactions.'"  <u>Id</u>. (quoting <u>Saint Louis v. Baystate</u>
<u>Med. Ctr., Inc.</u>, 568 N.E.2d 1181, 1185 (Mass. App. Ct. 1991)).

It is true that the claims in the case at bar are brought under 18 U.S.C. § 1962(c) and (d), fraud, usury, and chapter 93A in contrast to the breach of contract claim in the Essex case. It is also true that the fraud and chapter 93A claims in the case at bar do not precisely track the nature of the fraud and chapter 93A claims brought by OCVI and Cohen in the Essex case. A shared cause of action is nevertheless found if the claims derive from "'the same transaction or series of connected transactions.'"  Id.  Claim preclusion applies "'even though the claimant is prepared in a second action to present different evidence or legal theories to support his claim, or seeks different remedies.'"  Mancuso v. Kinchla, 806 N.E.2d 427, 436 (Mass. App. Ct. 2004) (quoting Heacock v. Heacock, 520 N.E.2d at 153).  It is also well settled that a "failure to plead a compulsory counterclaim bars a party from bringing a later independent action on that claim."  Mancuso v. Kinchla, 806 N.E.2d at 433.

As previously stated, the claims in the complaint include civil RICO, conspiracy to violate civil RICO, fraud, usury, and chapter 93A.  (Docket Entry # 1).  In the event these claims are compulsory counterclaims vis-à-vis the Essex case, there is no need to address other means to establish the identicality of the causes of action.  See, e.g., Mancuso v. Kinchla, 806 N.E.2d at 434, 436-39 (not relying on compulsory counterclaim analysis as

basis to find claim preclusion because parties did not address it and proceeding to analyze claim preclusion principles).  "As the judgment in the [Essex case] was rendered . . . in Massachusetts court[], Massachusetts claim preclusion standards apply." <u>Lynch v. Board of State Examiners of Electricians</u>, 218 F.Supp.2d 3, 5 (D. Mass. 2002).  Massachusetts Rule of Civil Procedure 13(a) ("Rule 13(a)") defines a compulsory counterclaim as a claim that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and "does not require for adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Mass. R. Civ. P. 13(a).

Merola argues the civil RICO claims brought in the present federal action could not have been brought in the Essex case as compulsory counterclaims because the Essex court would not have jurisdiction to adjudicate them.  (Docket Entry # 28).  The Supreme Court in <u>Tafflin v. Levitt</u>, however, held that state courts have concurrent jurisdiction over civil RICO claims.  493 U.S. 455, 467 (1990).  Indeed, state courts are well equipped to "handle the complexities of civil RICO actions, particularly since many RICO cases involve asserted violations of state law," such as the pendent fraud and usury claims in this action.  <u>Id.</u> Merola's argument is therefore unavailing.

Turning to the identicality of the claims, defendants argue the civil RICO, conspiracy to violate civil RICO, fraud, usury, and chapter 93A claims alleged by Merola in the present case "arise out of the same transactions or occurrences that were the subject matter of the [Essex case]." (Docket Entry # 20).  The phrase "transaction or occurrence" is broadly interpreted "'in a sense to effectuate the settlement in one proceeding of controversies so closely connected as appropriately to be combined in one trial in order to prevent duplication of testimony, to avoid unnecessary expense to the parties and the public, and to expedite the adjudication of suits.'" Keystone Freight Corp. v. Bartlett Consolidated, Inc., 930 N.E.2d 744, 749 (Mass. App. Ct. 2010) (analyzing transactional approach with respect to compulsory counterclaims under Rule 13(a)) (citation omitted).  There must be a "'logical relationship' between the . . . state claims and [Merola]'s federal claims that the [latter] clearly should have been added as compulsory counterclaims to [Merola]'s answer in the [Essex case]." Mancuso v. Kinchla, 806 N.E.2d at 433; see, e.g., Pumpelly v. Cook, 100 F.R.D. 238, 239 (D.D.C. 1985) (finding logical relationship inasmuch as two cases involved the same four agreements and same participants alleging breach of agreements).

In the Essex case, Merola had the opportunity to contest the factual issues concerning the business transactions

conducted by the parties under the OCVI and Cohen notes, which
he seeks to relitigate as the foundation of the alleged
"fraudulent and extortionary scheme" (Docket Entry # 1) in the
current proceeding. Although Merola argues that the factual
allegations at bar are "much more expansive than those
previously litigated" (Docket Entry # 28), there was the
necessary logical relationship between the prior state court
breach of contract claim and the present claims such that the
latter could and should have been plead as compulsory
counterclaims in answer to the complaint in the Essex case. See
Keystone Freight Corp. v. Bartlett Consolidated, Inc., 930
N.E.2d at 749 ("a [compulsory] counterclaim need not rest on
precisely identical facts or pose identical allegations"). The
claims in both actions arise out of a dispute involving a series
of loan transactions conducted by the parties encompassed in the
OCVI and Cohen notes. The fact that the civil RICO, conspiracy
to violate civil RICO, fraud, usury, and chapter 93A claims
encompass evidence of two additional loans to support
allegations of the overall scheme does not alter the logical
relationship between the loan transactions at issue in the Essex
case and the overall business dealings at issue in the present
claims. See, e.g., id. (finding logical relationship inasmuch
as two cases involved same debt between same parties); In re
Iannochino, 242 F.3d 36, 38 (1st Cir. 2001) (holding that suit

for professional malpractice was compulsory counterclaim to earlier award of fees in bankruptcy to debtor's attorney).  Both the Essex case and the instant dispute arise out of the same transaction or occurrence inasmuch as each action involves the business relationship and series of loan transactions between Merola, P. Coco, Cieri and Cohen, individually and through their respective corporate entities.

Furthermore, the civil RICO, conspiracy to violate civil RICO, fraud, usury, and chapter 93A claims would not have required the presence of third parties over whom the Massachusetts Superior Court could not acquire jurisdiction because all of the parties in this action are subject to personal jurisdiction in Massachusetts.[10]  Thus, the claims in the present dispute are compulsory counterclaims with respect to the Essex case under Rule 13(a).  Consequently, the claims are subject to claim preclusion as claims that could and should have been adjudicated in the Essex case and are barred under the doctrine of res judicata.[11]

---

[10]  According to the complaint, P. Coco, Cieri, C. Coco, and Falloni are individual residents of Massachusetts.  DGRT is a Massachusetts trust with a principal place of business in North Andover, Massachusetts and GBI is a Massachusetts corporation with a principal place of business in Peabody, Massachusetts.

[11]  In light of the recommended dismissal of the civil RICO, conspiracy to violate civil RICO, fraud, usury, and chapter 93A claims based on res judicata, it is not necessary to address the sufficiency of the factual allegations of the complaint,

II.   <u>Motion for Sanctions</u>

Defendants argue that Merola violated Rule 11 by filing the complaint because the claims are wholly unsubstantiated and lack any factual basis.  (Docket Entry # 22).  Additionally, defendants assert that the allegations in the complaint were made in retaliation for OCVI and Cohen's suit against Merola and Merola's corporate entities.  (Docket Entry # 22).  They argue that this motive is evidenced by the timing of the present suit, filed after the Essex case "despite years of alleged nefarious business dealings," and the naming of P. Coco's wife, C.Coco, and P. Coco's employee, Falloni, as defendants without "sufficient facts . . . that could give rise to a claim against [them]."  (Docket Entry # 22).  In opposing the motion for sanctions, Merola asserts that he fully complied with Rule 11 and all factual allegations are based on his "direct knowledge gained through his business relationship with the defendants since 2003."  (Docket Entry # 28).  Further, Merola notes that the purpose for filing suit against defendants is solely to recover damages and "[t]he time in which [the allegations] are pled has no bearing on their truthfulness."  (Docket Entry # 28).

---

Merola's compliance with federal pleading requirements, and defendants' request for a more definite statement pursuant to Rule 12(e).

DISCUSSION

Rule 11 provides, in pertinent part, that, "by presenting to the court a pleading, . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief" after a reasonable inquiry, that "it is not being presented for any improper purpose," "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument," and "the factual contentions have evidentiary support."  Fed. R. Civ. P. 11(b).  With respect to pleadings, Rule 11 authorizes "sanctions on a party or lawyer for advocating a frivolous position, pursuing an unfounded claim, or filing a lawsuit for some improper purpose."  CQ Intern. Co., Inc. v. Rochem Intern., Inc., USA, 659 F.3d 53, 60 (1st Cir. 2011); see Fed. R. Civ. P. 11(b).  A frivolous claim is one which is "either not well-grounded in fact or unwarranted by existing law or a good faith argument for an extension, modification or reversal of existing law."[12]  Aronson v. Advanced

---

[12]  With the exception of an assertion that Merola is trying "to avoid a statute of limitations defense," defendants do not argue that Merola is pursuing claims that are not warranted by existing *law* or a good faith extension of such law.  The statute of limitations "argument" is therefore waived because defendants do not develop it.  See Curet-Velazquez v. ACEMLA de Puerto Rico, Inc., 656 F.3d 47, 54 (1st Cir. 2011) ("[a]rguments alluded to but not properly developed before a magistrate judge are deemed waived"); Coons v. Industrial Knife Co., Inc., 620 F.3d 38, 44 (1st Cir. 2010) ("district court was 'free to disregard' the state law argument that was not developed in Coons's brief").  They do not identify the limitations periods for the

Cell Tech., Inc., 972 F. Supp. 2d 123, 138 (D. Mass. 2013)
(quoting Cruz v. Savage, 896 F.2d 626, 632 (1st Cir. 1990)
(internal quotation marks omitted)).  Rule 11 is "not a strict
liability provision, and a showing of at least culpable
carelessness is required before a violation of the rule can be
found."  Citibank Global Mkts., Inc. v. Santana, 573 F.3d 17, 32
(1st Cir. 2009) (citations and internal quotation marks
omitted).  In considering a Rule 11 motion for sanctions, a
court evaluates a litigant's conduct under an "'objective
standard of reasonableness under the circumstances.'"  Hochen v.
Bobst Group, Inc., 198 F. R. D. 11, 16 (D. Mass 2000) (quoting
Cruz v. Savage, 896 F.2d at 632).

    Here, defendants maintain "there is no *factual* basis for"
the claims in the complaint.  (Docket Entry # 22) (emphasis
added).  The complaint, however, specifies dates and provides
detailed allegations and facts to support the claims against
defendants.  See, e.g., Galanis v. Suzulik, 841 F. Supp. 2d 456,
461 (D. Mass. 2011) (finding no factual basis for complaint
where plaintiff did not provide any evidence supporting
allegations outside of conclusory statements).  Merola's

---

claims in the case at bar or provide any law or facts why the
statute of limitations precludes the claims in the case at bar
other than noting that Merola "has been in a business
relationship with the Defendants since in or around 2003."
(Docket Entry # 22).

opposition to defendants' motion for sanctions further reiterates the detailed allegations of the complaint. (Docket Entry # 28). For example, the interest rate in OCVI note three, the Cohen note, and the Merola note exceeds the 20% limit in effect in Massachusetts. See Mass. Gen. Laws ch. 271, § 49(e). The factual contentions therefore have sufficient evidentiary support to avoid Rule 11 sanctions.

Defendants next argue that Merola filed the complaint for an improper purpose, specifically to retaliate against OCVI and Cohen for the Essex case. (Docket Entry # 22). The record, however, does not sufficiently demonstrate that the complaint was made in retaliation. See Vrusho v. Creative Transp. Services, 2013 WL 6909446, at *3 (D. Mass. Dec. 31, 2013) (finding no improper purpose based on record even though plaintiff's appeal is precluded); see generally Obert v. Republic Western Ins. Co., 398 F.3d 138, 147 (1st Cir. 2005) ("[b]ecause there were no proven lies, we think that the Rule 11 findings cannot stand even though we agree that the motion was objectively hopeless"). Accordingly, Merola is not presenting the complaint for an improper purpose in violation of Rule 11.

CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[13] that defendants' motion to dismiss (Docket Entry # 19) be **ALLOWED**.   The motion for sanctions (Docket Entry # 21) is **DENIED**.


/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[13] Any objection to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  See Fed. R. Civ. P. 72(b).  Any party may respond to another party's objections within 14 days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.